# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD ANTHONY ARMSTRONG,

    Petitioner, pro se,

v.

THOMAS CARROLL, Supt. of Johnston Correctional Inst.,

    Respondent.

1:05CV234

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Respondent's motion for summary judgment (docket no. 3). Petitioner has responded in opposition to the motion and, in this posture, the matter is ripe for disposition. Since there has been no consent, the court must deal with the motion by way of a recommended disposition. For the reasons stated herein, it will be recommended that the court grant Respondent's motion for summary judgment.

### Background

Pro se Petitioner Richard Armstrong is a state prisoner who, in Durham County Superior Court on February 19, 2001, was tried by a jury and convicted of possessing drug paraphernalia. He was found not guilty of possession of cocaine and a mistrial was declared on other drug-related offenses. Then, on February 25,

2002, and on March 11, 2002, Petitioner was tried by a jury and convicted of trafficking heroin by possession and possession with intent to sell and deliver heroin. These judgments were consolidated with Petitioner's prior drug paraphernalia conviction and he was sentenced to 225-79 months imprisonment. On July 20, 2004, the North Carolina Court of Appeals issued an unpublished opinion finding no error. Petitioner then dated a pro se motion for appropriate relief ("MAR") August 3, 2004, and filed it in Durham County Superior Court on August 11, 2004. On or about October 27, 2004, Petitioner submitted a pro se motion to voluntarily dismiss his MAR. On November 4, 2004, without ruling on Petitioner's motion to dismiss his MAR, the MAR court summarily denied the MAR. Petitioner then dated a pro se certiorari petition December 1, 2004, and filed it in the North Carolina Court of Appeals on December 8, 2004. Certiorari was denied on December 29, 2004. Petitioner dated his pro se federal habeas application form February 3, 2005, and it was file-stamped in this court on March 14, 2005.

**Facts**

The facts were summarized by the North Carolina Court of Appeals as follows:

> Defendant was convicted at the first trial of possession of drug paraphernalia. Defendant was found not guilty of possession of cocaine, and a mistrial was declared as to the remaining charges because the jury was deadlocked. Prayer for judgment was continued on the verdict of possession of drug paraphernalia. After a second trial, defendant was convicted of trafficking in heroin and possession with intent to sell or deliver heroin. The convictions were consolidated for judgment with the possession of drug paraphernalia conviction and defendant was sentenced to a term of 225 to 279 months

2

imprisonment. Defendant appeals. After careful review of the record, briefs and contentions of the parties, we find no error.

The evidence presented at the two trials tended to show the following: In July 1999, police began an investigation into an individual named Little who was allegedly selling heroin in Durham. Investigation through interviews revealed that Little was the defendant, Richard Anthony Armstrong. Police learned that defendant drove a burgundy BMW and had a girlfriend who lived off of University Drive in Durham.

On 5 May 2000, Durham police set up surveillance at the apartment off of University Drive. At approximately 10:48 a.m., defendant got into a BMW and drove off. Durham police followed defendant in an unmarked vehicle, and clocked him speeding at 85 m.p.h. in a 55 m.p.h. speed zone. Defendant pulled into Ample Storage on Hillsborough Road in Durham. Police had information that defendant stored drugs at storage units. Defendant left his car and entered one of the storage units.

Police then planned on stopping defendant after he left the unit. They went to the manager's office of the storage facility and asked her to lock the gate behind defendant. Before defendant could leave the facility, he was stopped at the gate by police. Sergeant John Peter of the Durham Police Department approached defendant's car, drew his gun and told defendant to put his hands up. Sergeant Peter looked into the passenger window of defendant's car and observed electronic scales, an open bag with what appeared to be "cutting agent," and a bar of soap. Sergeant Peter stated that "I see cutting agent." Defendant corrected him and told him that the bars of soap were the cutting agent. The officers arrested and handcuffed defendant.

Investigator Charles Davidson of the Durham Police Department told defendant that he was the subject of an investigation, and also told defendant "that if he wanted to cooperate, this was the time to do it." Defendant stated he wanted to cooperate. He told Davidson that he did not have any drugs in the car or storage unit, and gave consent to search the unit and his car. Davidson asked defendant for consent to search the apartment off of University Drive, and defendant admitted that he had "about 55 grams in the apartment." Defendant further stated that his girlfriend had nothing to do with the heroin, and he offered to take Davidson to the heroin. Police and defendant went to the apartment, and asked defendant's girlfriend for consent to search the apartment. She agreed, and defendant told Davidson that the

3

> drugs were in the kitchen in a cabinet above the refrigerator. Investigator William Evans located the cabinet, opened it and found "tennis ball-sized bags of heroin." A further search of the apartment revealed a coffee grinder which field tested positive for heroin residue. Inside a safe in the apartment were boxes of glassine baggies and rubber bands.

*State v. Armstrong*, 165 N.C. App. 544, 600 S.E.2d 899 (2004).

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his

4

claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

It is too glib, however, simply to say that the standard formulation for assessing summary judgment in the run-of-the-mill civil case applies in all habeas cases. For example, the usual summary judgment analysis contemplates accepting the evidence and all justifiable inferences from the evidence in the light most favorable to the non-movant. In the habeas context, however, if there is a contention that the evidence at trial does not support the underlying conviction, the appropriate standard calls for viewing the evidence in the light most favorable to the prosecution and according the prosecution the benefit of all reasonable inferences from the evidence, and in that light, determining if any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Furthermore, because Petitioner filed his federal habeas petition after the April 24, 1996, enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA amendments to 28 U.S.C. § 2254 apply. Under the AEDPA amendments, no habeas application by a state court prisoner may be granted with respect to any claim that was adjudicated on the merits in state court proceedings

5

unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court decision is contrary to Supreme Court precedent if it arrives at a conclusion opposite that of the Supreme Court on a question of law or decides the case differently from Supreme Court precedent based on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an unreasonable application of Supreme Court law "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409.

The "unreasonable application" standard does not admit of easy definition. For example, Justice O'Connor, writing for a majority of the Court, has said that "[t]he term 'unreasonable' is no doubt difficult to define." *Williams*, 529 U.S. at 410. Nevertheless, more recently the Supreme Court has said that the

> unreasonable application prong of § 2254 (d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. In order for a federal court to find a state court's application of our precedent unreasonable, the

6

> state court's decision must have been more than incorrect
> or erroneous. The state court's application must have
> been objectively unreasonable.

*Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted); *see also Penry v. Johnson*, 532 U.S. 782, 793 (2001) (stating that even if the habeas court determines that the state court decision applied federal law incorrectly, relief is only appropriate if the application was also objectively unreasonable); *Williams*, 529 U.S. at 410 (stating that an *unreasonable* application of federal law is different from an *incorrect* application of federal law). Finally, even if the state court's adjudication is contrary to or an unreasonable application of Supreme Court precedent, a federal habeas court may not grant relief unless the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict."[1] *Penry*, 532 U.S. at 795 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). These standards will guide the analysis below.

Petitioner first claims that the state MAR court erred in denying his MAR without first ruling on his motion to voluntarily dismiss the MAR. Alleged errors or

---

[1] On direct review, a state appellate court may find a constitutional error harmless only if it is harmless beyond a reasonable doubt under the standard articulated in *Chapman v. California*, 386 U.S. 18, 24 (1967). In 1993, the United States Supreme Court made clear in *Brecht v. Abrahamson* that, with respect to non-structural errors, a federal habeas court reviewing a constitutional error must ask whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The circuits appear to disagree over whether, on federal habeas review, the *Brecht* "substantial and injurious" standard of review has survived the passage of the AEDPA amendments. This circuit's court of appeals has taken the position that the *Brecht* standard of review has indeed survived the passage of the AEPDA amendments. *See, e.g., Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002).

deficiencies occurring in state post-conviction proceedings are not cognizable on federal habeas review. *See Bryant v. State of Md.*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."). Therefore, the court should grant the motion for summary judgment as to this claim.

As for any remaining claims that Petitioner might be attempting to bring, the court notes that the preprinted habeas petition form lists numerous possible grounds for relief on habeas review. Petitioner has placed marks next to the five following grounds for relief already preprinted on the form: (1) Conviction obtained by use of coerced confession; (2) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (3) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant; (4) Conviction obtained by a violation of the protection against double jeopardy; and (5) Denial of effective assistance of counsel. Aside from placing marks next to each of these possible grounds for relief, however, Petitioner has alleged no factual allegations anywhere in the petition to support any of these grounds for relief. Furthermore, in his brief opposing Respondent's motion for summary judgment, Petitioner does not assert any arguments as to any of these remaining five grounds for relief. Because Petitioner has asserted no factual allegations whatsoever to support these five remaining grounds for relief, the court

8

Case 1:05-cv-00234-JAB-WWD  Document 8  Filed 06/01/05  Page 8 of 15

may grant Respondent's motion for summary judgment for this reason alone.[2] In any event, the court will assume that the claims asserted in his federal habeas petition are based on the same factual allegations used to support the same claims in his state court proceedings. For the reasons stated herein, summary judgment should be granted as to each of these additional grounds for relief.

Coerced Confession

Petitioner first argues, without asserting any factual allegations, that his confession was coerced in violation of his rights under the Fifth Amendment. Most likely, he intends to argue that certain statements that he made to the police when they arrested him at the storage unit were not given voluntarily, including his statement to the police that he was keeping heroin at his girlfriend's apartment, his admission that the heroin was his, and his statement to the police that he bought the drugs in New York. In both his direct appeal and his MAR, he also raised a claim for "coerced confession," while at the same time denying that he even made these statements, and he argued that the statements should have been suppressed. The North Carolina Court of Appeals held that because Petitioner did not move to suppress the evidence at trial, his arguments that the trial court should have excluded the evidence and statements were waived. The MAR court summarily

---

[2] Indeed, in the section directly above these preprinted grounds, the form specifically instructs: "Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any of these grounds."

denied the same claim. This court finds that the state MAR court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno*, 378 U.S. 368, 376 (1964). To determine whether a statement was coerced, a court must "examine[] 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession[,] . . . tak[ing] into consideration 'the totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation.'" *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Factors to weigh include the age, education, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *See Arizona v. Fulminante*, 499 U.S. 279, 286 (1991). Here, Petitioner was 37 years old with four years of college education. He was read his *Miranda* rights and waived them before telling officers that he had about 55 grams of heroin back in his girlfriend's apartment. There is simply no evidence to show that investigators threatened Petitioner or made any promises of leniency to him for his cooperation. The first *Miranda* rights were read to Petitioner at the storage unit and there is no evidence suggesting that he asked for a lawyer or refused to answer questions. In fact, there is an abundance

10

of evidence showing, to the contrary, that Petitioner willingly and voluntarily waived his rights to be silent and to have a lawyer present and knowingly told investigators where his heroin was located. In sum, the MAR court's summary denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Thus, the court should grant the motion for summary judgment as to this claim.

## Evidence Obtained by Unconstitutional Search and Seizure

Petitioner next contends, without providing any supporting factual allegations, that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure in violation of his Fourth Amendment rights. Petitioner raised a Fourth Amendment claim in his state MAR, asserting that when police officers confronted Petitioner at the storage facility and informed him that he was being pulled over and cited for speeding, there was no probable cause to detain, search, or arrest him once his documents were shown to be in order. The MAR court summarily denied the claim. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court determined that where a state has provided a full and fair opportunity to litigate a Fourth Amendment claim, the claim is barred from federal habeas review. Once a district court has inquired into whether the petitioner had an opportunity to raise a Fourth Amendment claim, "it need not inquire further into the merits of the case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was

11

in some way impaired." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978). Here, Petitioner has not shown or even argued that his opportunity to fully and fairly raise his Fourth Amendment claim at or before trial was in some way impaired. Thus, this claim is barred from federal habeas review, and the motion for summary judgment should be granted as to this claim.

<u>Failure of the Prosecution to Disclose Favorable Evidence</u>

Petitioner next contends, without providing any supporting factual allegations, that his conviction was obtained by the unconstitutional failure of the prosecution to disclose favorable evidence. In his state MAR, Petitioner asserted that he never told police that the heroin in his girlfriend's apartment was his, that he did not know about the heroin in his girlfriend's apartment, and that the heroin was not his. He argued that his girlfriend had been acting as a police informant and conspired with police officers by allowing them to plant the heroin in her apartment in order to entrap Petitioner. Petitioner argued that his girlfriend had a motive to lie and entrap Petitioner because she was facing criminal charges that were drug related and she agreed to have the drugs planted in her apartment to seek favor with the police. The MAR court summarily denied the claim.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." A *Brady* violation has three essential

12

elements: (1) the evidence must be favorable to the accused; (2) it must have been suppressed by the government, either willfully or inadvertently; and (3) the suppression must have been material, i.e., it must have prejudiced the defense at trial. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Monroe v. Angelone*, 323 F.3d 286, 299-300 (4th Cir. 2003). Here, Petitioner has presented nothing more than pure speculation that his girlfriend was working as a police informant or that police planted the heroin in Petitioner's girlfriend's apartment in order to set Petitioner up. Mere speculation is not enough to show a *Brady* violation. *Accord Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a Brady claim."); *Franza v. Stinson*, 58 F. Supp. 2d 124, 154 (S.D.N.Y. 1999) (stating that the petitioner's "claim of withheld *Brady* material is speculative, conclusory and unsupported, and thus must be rejected"). In sum, the MAR court's adjudication of Petitioner's *Brady* claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Thus, the court should grant the motion for summary judgment as to this claim.

Double Jeopardy Violation

Petitioner next contends, without providing any supporting factual allegations, that his conviction was obtained in violation of the constitutional protection against double jeopardy. Petitioner raised a double jeopardy claim in his state MAR, contending that he was subjected to double jeopardy because in addition to being

13

convicted for the heroin possession he was also required to pay a tax under North Carolina's Drug Tax, see N.C. GEN. STAT. §§ 105-113.105 et seq. The MAR court summarily denied the claim. This circuit's court of appeals has already held that a North Carolina state court's rejection of the same type of double jeopardy argument made here was neither contrary to nor an unreasonable application of Supreme Court law. Vick v. Williams, 233 F.3d 213 (4th Cir. 2000) (stating that a North Carolina court's rejection of a double jeopardy drug tax claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law). Thus, the court should grant the motion for summary judgment as to this claim.

Ineffective Assistance of Counsel

Petitioner next contends, without providing any supporting factual allegations, that he received ineffective assistance of trial counsel. To demonstrate ineffective assistance of counsel, a defendant must show that the counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance is demonstrated when the "counsel made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. There is a strong presumption that a counsel's conduct falls within "the wide range of reasonable professional assistance." Id. at 689. Prejudice is established if there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. In his state MAR, Petitioner

14

raised a series of general allegations of ineffective assistance of counsel. Petitioner argued, for instance, that counsel did not adequately investigate, prepare for trial, interview witnesses, or file appropriate motions, including motions to suppress based on the Fourth and Fifth Amendment claims addressed above. The MAR court summarily denied Petitioner's ineffective assistance of counsel claim. Here, nothing in the record suggests that the defense counsel's actions were outside the wide range of professionally competent assistance. See Strickland, 466 U.S. at 689. Therefore, the MAR court's summary denial of this claim was neither contrary to nor an unreasonable application of Strickland, and the court should grant the motion for summary judgment as to this claim.

## Conclusion

For the reasons stated herein, **IT IS RECOMMENDED** that Respondent's motion for summary judgment be **GRANTED**, and the petition be **DISMISSED**.

Wallace W. Dixon
United States Magistrate Judge

May 26, 2005

15